MOORE v. STAINTON.

(Supreme Court, Appellate Division, Second Department. February 11, 1903.)

1. MASTER AND SERVANT—EVIDENCE OF RELATION

In an action against S. and P. for a personal injury caused by the negligence of a truck driver, there was evidence that S. owned the truck, and employed and directed the driver; that he did a large amount of hauling for P., and also hauled for others. S. had a desk at P.'s place of business, and, when P. had hauling to be done, he gave S. or his superintendent a list of the articles to be hauled, but gave no further directions to S. or to his teamsters. Some years before, P.'s name was painted on some of S.'s trucks, but none of the trucks were so painted for 18 months before the accident. Held, that no relation of master and servant was shown between P. and the driver, and the action, as to P., was properly dismissed.

Hirschberg, J., dissenting.

Appeal from trial term, Kings county.

Action by Thomas F. Moore against Richard Stainton and others. From a judgment against defendant Stainton alone, and from an order denying a new trial, Stainton appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Edward P. Mowton, for appellant.
Edward J. McCrossin, for respondent.

JENKS, J. The plaintiff has recovered a judgment for damages for personal injuries. While standing on a street of the city, with his back to the roadway, talking to an acquaintance, he was struck by a truck which had been swung around, and was being backed over the sidewalk for the purpose of discharging its load. The truck was owned by Mr. Stainton, and the driver was about to deliver certain goods from Perkins, Goodwin & Co. to their customers. The plaintiff complained against Perkins, Goodwin & Co. and against Stainton. The court dismissed his case against Perkins, Goodwin & Co., but sent his case against Stainton to the jury. We think that this was the proper disposition of the questions of negligence and of contributory negligence, and that there is no reason to disturb the verdict.

The appellant further insists that the question of the liability of Perkins, Goodwin & Co. should have been submitted to the jury, on the theory that although it is true that, if the defendants were joint tort feasors, either or both might be held responsible, and therefore one might not complain that the other was discharged, yet, if the jury found Stainton liable, it could not find Perkins, Goodwin & Co. liable, and vice versa, inasmuch as either one or the other was at the time master of the driver of the truck. Howard v. Ludwig, 57 App. Div. 94, 67 N. Y. Supp. 1095, and Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079, both affirmed in 171 N. Y. 677, 64 N. E. 1118, are cited as authorities for this contention. And it is urged that many of the essential features which warranted the submissions to juries in those cases appear in the case at bar. As any liability in Perkins, Goodwin & Co. must arise from the relation of master and servant, we must inquire whether the evidence required the submission

of the question of their mastership to the jury, as one of mixed law and fact. Baldwin v. Abraham, supra, and authorities cited. In the Baldwin Case, Hirschberg, J., said:

"The recent decisions in this state seem to be uniform in the assertion that the true test as to whether the relation of master and servant exists is not necessarily the payment of wages, but is whether, at the time of the injury complained of, the alleged servant is engaged in the business of the alleged master, and subject to his direction and control. It is not so much the actual exercise of control which is regarded, as the right to exercise such control."

The plaintiff's case showed as follows: Perkins, Goodwin & Co. were wholesale paper dealers. The firm did not own any trucking horses, nor does it appear that they owned any trucks. Stainton was a boss cartman, who owned a large number of trucks and horses, and worked for Perkins, Goodwin & Co. and other business houses. He employed a superintendent, a foreman, and truckmen, and carted goods for Perkins, Goodwin & Co. under a contract, at a certain price per ton. When Perkins, Goodwin & Co. "had goods at the docks," their shipping clerk made out a list thereof, with their destinations, and handed it either to Stainton or his superintendent. No other directions were given by or on behalf of Perkins, Goodwin & Co. to Stainton or to his superintendent, or to any of Stainton's employés. So far, it is difficult to see how Stainton could have had freer hand as an independent contractor, for all that was done was to indicate his work to him. But the learned counsel for the appellant relies mainly upon three pieces of testimony: First, that Stainton carried receipts in which the consignee receipted to Perkins, Goodwin & Co.; second, that a part of the shipping clerk's office of Perkins, Goodwin & Co. was set apart for Stainton or his superintendent, for the attendance on their business; third, referring to the work undertaken by Stainton, a member of the firm of Perkins, Goodwin & Co. testified, "He has to do it not only to our satisfaction, but according to our direction," and, further, that it was also testified to that either Stainton or his superintendent was always in Perkins, Goodwin & Co.'s place, exercising his duties and receiving instructions. The question is as to the probative force of this testimony towards establishing the relation of master and servant between Stainton's truckman and Perkins, Goodwin & Co., in connection with the other testimony in the case. I think that the mere fact that Stainton's truckman took receipts from the consignee which ran to Perkins, Goodwin & Co. did not tend to show the relationship of master and servant. There is nothing at variance with the relationship of an independent contract for carriage in the fact that the truckman took receipts in the name of the consignor ond owner of the goods. Further, if the business, under the contract between Stainton and Perkins, Goodwin & Co., was so great and so constant that it would be despatched more readily by setting apart a station for Stainton and his superintendent, and might require the constant presence there of one or the other, this did not necessarily show or tend to show that the relationship of master and servant existed between the truckman and Perkins, Goodwin & Co. As to the testimony that Stainton had to do the work not only to the satisfaction, but according to the direction, of Perkins, Goodwin & Co.,

this must be read as qualified by the consistent statement of the witness:

"We do not give any directions whatever to Mr. Stainton, except to hand him the written delivery order for the goods. We do not give any directions to his drivers at all, at any time."

In Howard v. Ludwig, supra, the firm name and place of business of the defendant were on the truck, and "no definite evidence was given as to the terms of the contract," except that the truckmen furnished the truck, horses, and driver for $30 a week. It further appeared that the driver reported every morning with his truck and horses to the defendant, received his deliveries, attended to them, and then returned to the truckman's stable after the work was done. We were satisfied from the evidence in that case that by the contract the wagon, horses, and driver were actually placed under the control of the defendants; the driver was temporarily withdrawn from the business of his original employer, and transferred, with his horses and trucks, to the defendants, to be used by them in their business, and was subject to their orders and control for the time being, as if they had hired him directly. In Baldwin v. Abraham, supra, the original employer furnished the vans, driver, and helper for a fixed period at a price per day. The vans bore the firm name of the defendant, and their superintendent testified that he regarded them as his firm's wagons, and that he or his assistants exercised authority directly over the drivers, and assumed full control over the vans. We affirmed the verdict, saying:

"Certainly no authority can be found in this state to support the proposition that a merchant sued for injuries inflicted upon the street by one driving a wagon bearing his name, and loaded with his goods, can have the case dismissed on his simple affirmation that he had hired the driver and outfit from some unnamed and undisclosed stranger, yet the adoption of this proposition is a necessity to the reversal of the plaintiff's judgment."

But in the case at bar there appears, as I have shown, a principal who was under a contract with Perkins, Goodwin & Co., and who was at the same time engaged in similar work for other firms. This principal kept control over his own subordinates, including his drivers. There is not a particle of evidence to establish that there was any relation between Perkins, Goodwin & Co. and the driver of the truck in question, except that the owner of the truck, who was the employer of the driver, was under contract with them to do trucking for them, and that in order to do the work he received a description of the goods, their present place, and their destination, with receipts to show their delivery, and that thereupon he did his work in his own way, and by his own teams and drivers. If the truck had borne the sign of the defendants Perkins, Goodwin & Co., as had been the case with reference to some of the trucks years before, then it might be said that the fact was more or less significant, in connection with the other testimony, or in view of the absence thereof; but it appeared that Perkins, Goodwin & Co. had no concern with the placing of the signs on any of the trucks, or the removal of them, a year and half before. The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except HIRSCH-BERG, J., who dissents.